UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**JEFFREY EVANS, et al.,**

    **Plaintiffs,**

                      Case No. 1:19-cv-331
v.                     JUDGE DOUGLAS R. COLE

**FRANCIS ALOISIO, et al.,**

    **Defendants.**

### AMENDED OPINION AND ORDER[1]

This cause comes before the Court on the Motion To Amend Their Answer To Add A Third-Party Complaint (Doc. 13) filed by Defendants Francis Aloisio and Marlex Express, Inc. ("Marlex Express") (collectively "Defendants") requesting that the Court grant Defendants leave to amend their Answer (Doc. 10) to add contribution and indemnity claims against Sapp Brothers, Inc., the employer of one of the Plaintiffs, Jeffrey Evans. For the reasons below, the Court **DENIES** Defendants' Motion. (Doc. 13).

### BACKGROUND

**A.   Factual Allegations As Pled In Plaintiffs' Complaint.**

This case arises out of an incident that occurred on March 7, 2018, in Fremont County, Iowa, on Interstate-29 Northbound. That day, Defendant Francis Aloisio drove a semi-truck pulling a flatbed trailer that carried an oversized load. Aloisio

---

[1] As more fully set forth below, after issuing its original Opinion and Order (Doc. 25) on this Motion, the Court learned that it had misstated an aspect of the procedural background relating to Defendants' filing of a sur-sur-reply. (Doc. 24). This Amended Opinion and Order corrects the Court's oversight in its previous Opinion, and thus, this Amended Opinion and Order replaces the original Opinion (Doc. 25).

worked for Co-Defendant Marlex Express, which owned the truck and the trailer. While heading northbound on I-29, around 9:00 a.m., Aloisio began experiencing problems with the trailer's brakes. He pulled off to the interstate's right shoulder and parked there to investigate the issue. Aloisio then called the proposed Third-Party Defendant Sapp Brothers, a nearby service center, to request that the center dispatch a mechanic to his location to inspect and repair the trailer. Sapp Brothers sent Plaintiff Jeffrey Evans.

As Aloisio waited for Evans to arrive, he attempted to repair the trailer's brakes on his own. Believing that he had fixed the issue, Aloisio called Sapp Brothers again and notified the dispatcher that he no longer needed a mechanic's assistance. The dispatcher informed Aloisio that the mechanic (Evans) would arrive at Aloisio's location within a few minutes, and so Aloisio agreed to wait there until Evans arrived so that he could pay for the dispatch.

Upon pulling up behind Aloisio and the stopped semi-truck on the shoulder of I-29, Evans parked his service truck. Evans claims that, while he was still seated in his truck, he made eye contact with Aloisio, who was in the driver's seat of the semi-truck, through the semi-truck's driver-side mirror. Evans asserts that he waved to Aloisio, who in turn reached his arm out of the semi-truck's driver-side window and returned the gesture. Evans then exited the service vehicle, put on coveralls, and approached the semi-truck and attached trailer.

Almost immediately upon inspecting the trailer, Evans heard air leaking from the area near the trailer's rear passenger-side tires. Evans believed that the noise

2

indicated that there was a brake problem in that area. Accordingly, he crawled under the trailer to investigate the leak and determine the size of the air hoses installed on the trailer. Evans asserts that while he was under the trailer, Aloisio, suddenly and without warning, placed the semi-truck in gear and pulled it forward, crushing Evans and dragging him along the ground for approximately 20 feet. As a result, Evans suffered severe injuries.

**B.     Procedural Background.**

About 13 months after the accident, on May 3, 2019, Evans and his wife (together "Plaintiffs") filed suit against Aloisio and his employer, Marlex Express, for negligence, negligent entrustment, and loss of consortium. (*See* Pls.' Compl., Doc. 1, #1–9). Nearly four months later, on August 20, 2019, Defendants filed their Answer. (Doc. 10). Judge Barrett then issued a Calendar Order on October 28, 2019. (*See* Doc. 12). The Calendar Order scheduled a telephone status conference for November 14, 2019, and set the deadline for any motions to amend on December 1, 2019. (*See id.*). According to the Docket, Defendants did not mention to the Court any need to extend that deadline, nor raised any other concerns about it. (*See* Nov. 14, 2019 Dkt. Entry). A day after the deadline for motions to amend, on December 2, 2019, Defendants filed their Motion To Amend Their Answer To Add A Third-Party Complaint. (Doc. 17).

3

### C. Defendants Move To Amend Their Answer To Add A Third-Party Complaint Against Sapp Brothers.

In their one-day-late Motion,[2] Defendants request leave to amend their Answer to assert third-party claims against Evans' employer, Sapp Brothers. Defendants' proposed Third-Party Complaint asserts three theories of action: contribution, indemnity under breach of implied contract, and implied equitable indemnity. (Defs.' Mot. to Am. at #57). In Defendants' Reply (Doc. 16), though, which they filed on January 2, 2020, Defendants dropped their contribution claim against Sapp Brothers and instead sought to add (for the first time): (1) an equitable indemnification claim against Sapp Brothers for the alleged breach of an independent duty; and (2) a contribution claim against three Sapp Brothers employees: General Manager William Denton, Shop Manager Eldon Rowlett, and HR/Safety Manager Mary Eriksen. (*See* Defs.' Memo. in Reply ("Defs.' Reply") at #93, 97, Doc. 16). Given that Defendants attempted to swap their proposed claims in their Reply, Plaintiffs then moved the Court for leave to file a Sur-reply to address those issues. (Doc. 17). Defendants responded by consenting to Plaintiffs' Motion for Leave (Doc. 19) and concomitantly asking the Court for permission to file its own Sur-sur-reply (*id.*). After discussing various matters during a telephone status conference on April 14, 2020, the Court

---

[2] Defendants contend that, although the Calendar Order set the deadline for filing motions to amend the pleadings for Sunday, December 1, 2019, their Motion for Leave to Amend that they filed on Monday, December 2, 2019—a day after the deadline—was still timely. (*See* Defs.' sur-sur-reply at #189, Doc. 24). Defendants rely on Federal Rule of Civil Procedure 6(a), which provides methods for computing "any time period" that "is stated in days[.]" *Id.* As the Calendar Order provided a date-specific deadline, however, and not a deadline based on a fixed number of days, Rule 6(a) does not apply here. *Violette v. P.A. Days, Inc.*, 427 F.3d 1015, 1019–20 (6th Cir. 2005).

4

granted both Plaintiffs and Defendants leave to file additional briefing on the issues that Defendants had raised for the first time in their Reply. (Apr. 14, 2020 Dkt. Entry). Plaintiffs then submitted their Sur-reply (Doc. 22), and Defendants later filed their Sur-sur-reply (Doc. 24).[3]

In short, the upshot of the various third-party claims is that Defendants are seeking to make Evans' own employer or co-workers liable, in whole or in part, to Defendants for any damages that Evans recovers against the Defendants.

## LAW AND ANALYSIS

**A.    Standard of Review.**

Under Federal Rule of Civil Procedure 14(a)(1), "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." "But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer." *Id.* Here, Defendants did not file their Third-Party Complaint within 14 days of serving their Answer. Defendants thus forfeited their ability to file a third-party complaint as a matter of right under Rule 14(a)(1). Nor did Defendants file their proposed Third-Party Complaint within 21 days of filing their Answer, which is the amount of time that Rule 15(a)(1) allows for a party to amend their pleading (here, Answer) as a matter of course, *see* Fed. R. Civ. P. 15(a)(1), before a party is required to obtain leave of court. *See id.* at 15(a)(2). Thus, both Rule

---

[3] In its previous Opinion and Order on this Motion, the Court incorrectly asserted that the Defendants had filed their Sur-sur-reply without leave of Court. That was incorrect. Having now considered the arguments set forth in that filing, the Court concludes that they do not change the appropriate outcome.

14(a)(1) and Rule 15(a)(2) allow the Defendants to make their requested filing only with leave of the Court.

In reviewing that request, the Court should consider whether, among other things, the proposed amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). A proposed amendment is futile when that complaint could not survive a Rule 12(b)(6) motion to dismiss. *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citation omitted); *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (citation omitted). Thus, the dispositive question here is whether Defendants' proposed Third-Party Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Williams v. City of Cleveland*, 771 F.3d 945, 949 (6th Cir. 2014) (citation omitted).

**B.  Defendants' Proposed Claims Against Sapp Brothers Are Futile.**

Defendants seek to amend their Answer by adding a Third-Party Complaint against Sapp Brothers, Evans' employer. In their proposed claims, the Defendants seek to make Sapp Brothers (or Evans' co-workers) liable for any damages awarded to Evans and against the Defendants. Plaintiffs oppose Defendants' Motion. They argue that the claims that Defendants set forth in their Third-Party Complaint cannot survive a motion to dismiss because they are futile. The parties agree that Iowa law applies to this case. (Defs.' Reply at #89). And Defendants acknowledge in their Reply that Iowa law prohibits attributing common liability to (and therefore contribution claims against) an injured employee's employer. (*Id.* at #90). Accordingly, Defendants dropped the proposed contribution claim against Sapp

Brothers. (*Id.*). As a result, only their proposed claims for implied contractual indemnity or implied equitable indemnity remain.[4]

The crux of the issue then, is whether Iowa law permits Defendants to pursue indemnity actions against Sapp Brothers under the circumstances here. That is, can Defendants pass along to Evans' employer (Sapp Brothers) on an indemnity theory some or all of the responsibility for any damages awarded to Evans against Defendants?

In considering that question, a necessary starting point is Iowa workers' compensation program. Like such programs in most or all states, the statute pertaining to Iowa's workers' compensation program has an exclusive-remedy provision. Iowa Code § 85.20 (2018). That provision shields an employer from liability to its employees for any remedies beyond those that the program provides to the employee:

> The rights and remedies provided in this chapter, chapter 85A, or chapter 85B for an employee … on account of injury … for which benefits under this chapter, chapter 85A or chapter 85B are recoverable, shall be the exclusive and only rights and remedies of such employee … , the

---

[4] Although the Court can look beyond Defendants' late filing of its Motion to Amend, as they submitted the Motion only one day after it was due, Defendants' other oversight cannot be ignored. That is, Defendants—in the second to last paragraph of their *reply brief*—attempt to "delete" one proposed cause of action (contribution) and "add" two others. (Defs.' Reply at #97). For obvious reasons, parties cannot raise new claims or issues in a reply brief, and so Defendants forfeited those causes of action. *United States v. Turner*, 602 F.3d 778, 788 (6th Cir. 2010) (citation omitted). At the very least, they would need to move to amend anew to add those claims, and that motion would now be months after the deadline set forth on the Calendar Order. (And, as a result, Defendants would have to establish the additional showing of good cause for modifying the Calendar Order. *See* Fed. R. Civ. P. 6(b)(4).) Thus, for present purposes, the Court need not address the futility of Defendants' contribution causes of action against Sapp Brothers' employee-managers, or the equitable indemnification cause of action against Sapp Brothers for breaching an independent duty, as the Court is not allowing Defendants to amend their pleadings to add those claims, whether futile or not.

7

> employee's … personal or legal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury ….

*Id.*

Of course, here, it is not Evans (the employee) who seeks to recover against Sapp Brothers, but rather Defendants. And, while § 85.20 limits *an employee's* right to recover from his employer to only those remedies provided for in the Iowa workers' compensation program, *see Woodruff Constr. Co. v. Barrick Roofers, Inc.*, 406 N.W.2d 783, 784–85 (Iowa 1987), Iowa law recognizes that employers may still be responsible to parties other than employees, i.e., third parties. *Id.* at 785. Thus, although the exclusive-remedy provision of Iowa's workers' compensation program bars an employee from suing his employer, it does not necessarily bar a third party from seeking indemnification from that employer, at least so long as that claim is based on an "independent duty" that the employer owes to the third party. *Id.*

Evans and Defendants disagree about whether Sapp Brothers owed an "independent duty" to Defendants. Relying on two theories to establish such a duty, Defendants contend that Sapp Brothers must indemnify them for Plaintiffs' damages because: (i) Sapp Brothers entered into a service contract with Defendants that impliedly obligated Sapp Brothers to indemnify Defendants, or (ii) Sapp Brothers should equitably indemnify Defendants based on the notion that it is vicariously liable, apparently either for the "harm" caused by Evans (in climbing under the truck and being injured, thus giving rise to a potential damages claim against Defendants) or the harm caused by Evans' co-workers (in failing to sufficiently train or supervise

8

Evans, thus resulting in injuries for which Defendants could potentially be held liable). Ultimately, as discussed below, neither theory works.

> **1. Defendants Have Not Alleged Facts That Plausibly Establish Sapp Brothers Owed Defendants An "Independent Duty" Based On An Implied Contractual Indemnity Theory.**

"Like other contracts, a contract for indemnification can be expressed or implied." *McNally & Nimergood v. Neumann-Kiewit Constructors, Inc.*, 648 N.W.2d 564, 573 (Iowa 2002). Here, Defendants assert that their "business relationship" with Sapp Brothers imposed an implied duty on Sapp Brothers to indemnify Defendants. Indemnity can be implied where parties have entered into a contract that imposes an independent duty on a party, which, in turn, implies a shared understanding among the contracting parties that the party bearing that duty will indemnify the other for liability or loss resulting from a breach of that duty. *Id.* But neither a service contract nor a purchase contract alone is sufficient to imply that a party owes an independent duty to indemnify the other for a loss. *Id.* (first citing *Johnson v. Interstate Power Co.*, 481 N.W.2d 310, 321 (Iowa 1992); then citing *Woodruff Constr. Co.*, 406 N.W.2d at 787). It is only when a service or sales contract imposes a specific duty on a party, such as the duty to inspect, perform necessary repairs, or install necessary safety devices, that an obligation for indemnification of a loss may be implied. *Id.* (citing *Johnson*, 481 N.W.2d at 319). Even then, the standard for implying a contractual indemnity obligation "is generally quite high." *Wells Dairy v. Am. Indus. Refrigeration, Inc.*, 762 N.W.2d 463, 470 (Iowa 2009). That is, "there must be an 'unmistakable intent' to indemnify." *Id.* Thus, the Supreme Court of Iowa has found

9

implied contractual indemnity "where the circumstances require that a party to an agreement 'ought to act as if he had made such a promise, even though nobody actually thought of it or used words to express it.'" *Id.* (quoting *Woodruff Constr. Co.*, 406 N.W.2d at 785).

Here, Defendants do not articulate what specific duty, if any, Sapp Brothers owed to Defendants stemming from Aloisio's request for Sapp Brothers to repair the semi-truck. Rather, Defendants assert that "a business relationship with duties existed the moment Aloisio/Marlex called for roadside service, and Sapp Brothers dispatched Mr. Evans to the Scene." (Defs.' Reply at #92). For what it's worth, Plaintiffs concede that, based on the circumstances, there was perhaps "an implied contract" under which "Sapp Brothers promised to repair Defendants' truck in exchange for monetary payment." (Pls.' Memo. in Opp'n at #83). And Plaintiffs further admit that such a promise "would certainly impose a duty on Sapp Brothers to repair the truck in such a manner that did not endanger Defendants in any way[.]" (*Id.* at #83–84). But Plaintiffs then argue that "there is nothing to indicate that there was any discussion or anything reduced to writing which implied a mutual intent for Sapp Brothers to indemnify Defendants for injuries caused to Plaintiffs [i.e., to Sapp Brothers' own employees involved in the repair activities]." (*Id.* at #84). Upon review, the Court agrees.

Defendants have not established that Aloisio's request from Sapp Brothers to dispatch a mechanic to repair the semi-truck was anything more than a "plain vanilla contract." *Wells Dairy*, 762 N.W.2d at 470. That is not enough. *Id.* Rather,

10

"[s]omething beyond a routine service contract triggering only general duties of care … is required to support an implied contractual indemnity claim." *Id.* at 471. Without evidence (or at least allegations) indicating that Sapp Brothers agreed to indemnify Defendants for damages resulting from the service agreement between them—and particularly, for damages arising from harm to Sapp Brothers' own employees—Defendants' proposed amended pleading fails to state a claim for implied contractual indemnity against Sapp Brothers.

### 2. Defendants' Claim Against Sapp Brothers For Equitable Indemnity Arising From Vicarious Liability Fails As A Matter Of Law.

Next, Defendants request leave to amend their Answer to add a third-party claim against Sapp Brothers for equitable indemnity based on vicarious liability. While this request is not the model of clarity, based on the Court's review of the pleadings, it appears that Defendants contend that Sapp Brothers should indemnify Defendants on the theory that Sapp Brothers is vicariously liable for its employees' conduct. Here, Defendants claim that could give rise to liability under an indemnification theory in one of two ways. First, to the extent that Evans was responsible for causing the accident, and, as a result, Defendants are now on the hook for paying damages to him, Evans' employer (Sapp Brothers) should be vicariously liable for that "harm" that Evans caused to Defendant (i.e., liability for damages) by his actions. (Defs.' Reply, Ex. A at #109, Doc. 16-1). Second, to the extent that the accident resulted from the failures of Evans' co-workers to sufficiently train him on safety practices for roadside repairs, and thus contributed to the accident for which

11

Defendants must pay damages, those co-workers (and thus their employer on a vicarious liability theory) should be responsible for those harms. (*Id.*).

In support of those theories, Defendants note that, under Iowa law, there are occasions on which someone who is compelled to pay as a result of another's negligence may recover from "the active perpetrator of the wrong." *Rozmajzl v. Northland Greyhound Lines*, 49 N.W.2d 501, 506 (Iowa 1951). For example, "a servant is liable to his master who is not at fault for damages the latter is compelled to pay a third person because of the servant's negligence." *Id.* (citations omitted). More generally, when analyzing whether equitable indemnity applies based on a non-contractual relationship that gives rise to vicarious liability (e.g., respondeat superior, principals and agents, employers and employees, etc.), Iowa law requires courts to determine whether the relationship between the proposed indemnitor and indemnitee is such that fairness and justice require the primarily responsible party to bear liability for the underlying injury. *Wells Dairy*, 762 N.W.2d at 471.

The problem with that theory here, though, is that there does not appear to be any relationship between the proposed indemnitor (Sapp Brothers) and the proposed indemnitees (Defendants) on which such indemnity could be based. That is, relationship-based indemnity appears to arise in quasi-contractual situations—e.g., employee/employer—where the nature of the relationship inherently includes within it some kind of indemnity obligation. But the only relation between Sapp Brothers and Defendants was a traditional service-provider/customer relationship, and no one

12

has offered any reason to believe that such relationships give rise to vicarious liability under Iowa law.

Of course, in fairness to Defendants, they point to the employment relationship between Sapp Brothers and its employees (either Evans or the co-workers) as the basis for the vicarious liability. But that doesn't work either. Let's start with Evans. Presumably, the argument would be that to the extent that Evans' negligence gave rise to his own injuries, and Defendants are now forced to pay for those injuries, they should have a right of recovery (essentially against Evans) which shifts to Evans' employer under traditional respondeat superior principles. But merely to describe that theory highlights its failings. To the extent that Evans was responsible for his own injuries, under a comparative-fault regime his recovery will be reduced. Thus, Defendants will not pay for any fault associated with Evans' conduct, meaning that the antecedent basis for a respondeat superior claim against his employer is missing.

As to the claim based on Evans' co-workers, that is perhaps a little trickier. Essentially, the idea appears to be that their failure to train Evans contributed to the accident, and thus they are appropriately assigned a portion of the fault. But, as the co-workers are not parties to the case (at least yet), Defendants appear to contend that they would be responsible for that share of the liability, which accordingly should be transferred to the co-workers under basic comparative-fault principles, and then up to Sapp Brothers, under respondeat superior principles.

That doesn't work either. To be sure, vicarious liability may well work to shift liability up the ladder from the co-workers to Sapp Brothers, but what principle gives

13

rise to the horizontal shift from Defendants to Evans' co-workers in the first instance? As already noted, Defendants did not even seek to amend their pleading to include a claim against the co-workers until well after the deadline had passed, and even then only in a reply brief. Moreover, even putting aside the timing issues, it is not at all clear that Iowa's exclusive-remedy provision in its workers' compensation statute would allow Evans to sue his co-workers for failure to train. And Iowa law is clear that, if the plaintiff does not have a direct claim against the third-party defendant (i.e., here, the co-workers), then that third-party defendant cannot be included in the "apportionment of aggregate fault." *Pepper v. Star Equip., Ltd.*, 484 N.W.2d 156, 158 (Iowa 1992). In other words, under Iowa law, unless Evans has a direct claim against his co-workers, those co-workers, as a matter of law, are not properly allocated *any* fault for the accident. That in turn necessarily means that Defendants will not end up paying anything on account of the co-workers' fault. But, absent that horizontal claim by the Defendants against the co-workers, there is nothing that could give rise to a vertical-vicarious-liability claim against Sapp Brothers. Accordingly, Defendants' proposed claim against Sapp Brothers for equitable indemnification arising from vicarious liability is futile.

### 3. Defendants' Proposed Claim Against Sapp Brothers For Apportionment Of Fault Fails As A Matter Of Law.

Finally, to the extent that Defendants "delete" their proposed contribution cause of action against Sapp Brothers but "preserve" their allocation of fault cause of action, (Defs.' Reply at #97), the Court finds that both claims fail as a matter of law. That is because Defendants acknowledge Iowa law does not recognize common

14

liability between an employer and a third-party tortfeasor (*Id.* at #90), and yet common liability is a prerequisite for both contribution actions and apportionment-of-fault claims. *Thompson v. Stearns Chem. Corp.*, 345 N.W.2d 131, 132, 136 (Iowa 1984) (contribution); *Pepper*, 484 N.W.2d at 158 (apportionment of fault). Thus, like all the other proposed causes of action that Defendants have requested to add against Sapp Brothers, their proposed allocation of fault claim is futile.

## CONCLUSION

For the reasons above, the Court **DENIES** Defendants' Motion To Amend Their Answer To Add A Third-Party Complaint. (Doc. 13).

**SO ORDERED.**

May 21, 2020
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**