## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JEFFREY EVANS, et al.,

      Plaintiffs,

                                 **Case No. 1:19-cv-331**
      v.                           **JUDGE DOUGLAS R. COLE**

FRANCIS ALOISIO, et al.,

      Defendants.

## OPINION AND ORDER

This cause comes before the Court on two Motions in Limine to preclude expert testimony, one by Defendants Francis Aloisio and Marlex Express, Inc. (hereinafter "Aloisio" or "Marlex"), the other by Plaintiffs Jeffrey Evans and Amanda Evans (hereinafter collectively "Evans"). (Docs. 41, 43). For the reasons that follow, the Court **GRANTS** both Motions insofar as each seeks to preclude testimony regarding whether the condition of Aloisio's truck complied with the Federal Motor Carrier Safety Regulations ("FMCSRs"). The Court also **GRANTS** Evans' Motion insofar as it seeks to exclude testimony that Evans was not exercising common sense care for his safety.

## BACKGROUND

This case arises out of an incident in which Aloisio, a commercial truck driver, pulled his semi-tractor truck forward about twenty feet while parked on the shoulder of an interstate in Iowa. In a tragic turn of events, Evans, a mechanic who Aloisio

had summoned to the scene (although the parties dispute whether Aloisio knew Evans had arrived), was underneath the trailer at the time. As a result, Evans suffered severe injuries. (J. Evans Dep., Doc. 34, #1170–71). Evans sued Aloisio and Marlex, the small trucking company for which Aloisio worked (and which Aloisio and his sister own) for negligence. (Compl., Doc. 1, #5–8[1]).

The matter is now headed to trial. Evans intends to introduce testimony at that trial based on an expert report (the "Turner Report") in which the expert, Scott Turner, opines that Aloisio's vehicle was not in compliance with various FMCSRs at the time the accident occurred. (Turner Dep., Doc. 37, Ex. B., #1700). The gist of the FMCSRs, as applied on the facts here, is that Turner opines that Evans should not have operated his vehicle—either by leaving the location at which he had overnighted (*id*. at #1721, 1723), or by pulling the vehicle forward to test the brakes once stopped at the side of the road (*id*. at #1723). In furtherance of those same theories, Evans has also sought to introduce a vehicle inspection report (the "Floerchinger Report") made by a law enforcement officer, Sergeant Derek Floerchinger, shortly after the incident in question. The report attests to various safety violations relating to the truck's brake lines. (Floerchinger Dep., Doc. 35, Ex. 5, #1568). Aloisio, on the other hand, intends to introduce expert testimony by accident reconstructionist Douglas Heard that Aloisio complied with 49 CFR 396.7, a FMCSR which requires that "[a] motor vehicle shall not be operated in such a condition as to likely cause an accident

---

[1] Refers to PageID#.

or a breakdown of the vehicle." (Heard Dep., Doc. 32, Ex. 3, #609 (citing 49 CFR 396.7)).

In anticipation of the trial, the parties filed the instant Motions, each seeking to preclude testimony by the other's expert. Aloisio's Motion also seeks to exclude the Floerchinger Report.

## LEGAL STANDARD

To be admissible, all evidence must be relevant. Evidence is relevant if it tends to make a material fact more or less likely. Fed. R. Evid. 401. Relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusion, or misleading the jury. Fed. R. Evid. 403. Expert testimony is admissible if the expert is qualified, the testimony is based on sufficient facts or data, and the expert's principles and methods are reliable both generally and as applied to the facts of the case. Fed. R. Evid. 702. District courts have an obligation to ensure that expert testimony is relevant and reliable, whether or not the testimony is scientific in nature. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

## ANALYSIS

The parties largely focus their motions on the experts' qualifications and the data and methods the experts used to reach their conclusions. However, the Court finds that the prior questions of relevance and undue prejudice or confusion are instead largely dispositive here. Specifically, the Court holds as a matter of law that whether Aloisio complied with the FMCSRs concerning vehicle condition generally,

or 49 CFR 396.7 in particular, is not relevant to any material issue for trial, or, if marginally relevant, the prejudicial effect of such evidence dramatically outweighs the probative value.

Evans' theories of recovery all sound in negligence. Under Iowa law, which the parties agree applies here, a claim of negligence requires the plaintiff to prove that the negligent conduct at issue was both the cause in fact and the legal cause (sometimes called "proximate cause") of the plaintiff's injuries. *See Thompson v. Kaczinski*, 774 N.W.2d 829, 836 (Iowa 2009). In *Kaczinski*, the Iowa Supreme Court adopted the scope-of-liability test from the Third Restatement of Torts on the issue of legal, or proximate, causation. *Id.* at 839. Under that test, "[a]n actor's liability is limited to those physical harms that result from the risks that made the actor's conduct tortious." *Id.* at 838 (citing Restatement (Third) of Torts § 29). When a court considers in advance of trial whether "the plaintiff's harm is beyond the scope of liability as a matter of law, [the court] must initially consider all of the range of harms risked by the defendant's conduct that the jury *could* find as the basis for determining [the defendant's] conduct tortious." *Id.* (citing Restatement Third, § 29 cmt. D) (emphasis in original). Then, "the court can compare the plaintiff's harm with the range of harms risked by the defendant to determine whether a reasonable jury might find the former among the latter." *Id.*

In *Hill v. Damm*, the Iowa Court of Appeals approvingly quotes the following example from the Third Restatement:

> Richard, a hunter, finishes his day in the field and stops at a friend's house while walking home. His friend's nine-year-old daughter, Kim,

4

> greets Richard, who hands his loaded shotgun to her as he enters the
> house. Kim drops the shotgun, which lands on her toe, breaking it.
> Although Richard is negligent for giving Kim his shotgun, the risk that
> makes Richard negligent is that Kim might shoot someone with the gun,
> not that she would drop it and hurt herself (the gun was neither
> especially heavy nor unwieldy). Kim's broken toe is outside the scope of
> Richard's liability, even though Richard's tortious conduct was a factual
> cause of Kim's harm.

804 N.W.2d 95, 101–02 (Iowa Ct. App. 2011) (quoting Restatement Third, § 29, cmt.

D, illus. 3).

Here, the Court finds as a matter of law that even if Aloisio "operated" his

truck in violation of the FMCSRs (and thus breached a duty), either by leaving his

overnight location, or by pulling the truck forward fifteen to twenty feet on the

shoulder of the road at a time when the truck was in an out-of-service condition, that

breach was not the legal cause of Evans' injuries. That is because the Court concludes

that the risk that Aloisio would drag a mechanic who was working on the vehicle was

outside the "range of harms" that made operating the truck in violation of the

FMCSRs tortious. *Id.* Instead, like Kim in the example above, Evans suffered a harm

that is not within the scope of the liability that is contemplated by the FMCSRs

insofar as they relate to vehicle condition.

In reaching that result, the Court has attempted, as Iowa law commands, to

"consider all of the range of harms risked by the defendant's conduct that the jury

*could* find as the basis for determining [the defendant's] conduct tortious." *Kaczinski*,

774 N.W. 2d at 839 (citing Restatement Third, § 29 cmt. D) (emphasis in original).

For example, the rule against operating a vehicle in such condition as to likely cause

an accident or breakdown undoubtedly contemplates harms to other motorists or

5

pedestrians resulting from a collision with the vehicle due to that accident or breakdown, and thus such harms are part of the applicable "range of harms." Moreover, such a rule may contemplate the harms that are caused by pulling off to the side of the road as a result of a breakdown, i.e., causing an accident on the way to the shoulder, or by attempting to re-enter the roadway when such a breakdown is rectified, e.g., striking a passing car, or causing a vehicle to swerve to avoid the truck's re-entry, in turn causing an accident. One could even imagine that the "range of harms" extends to harms that are caused by the increased risk of working on trucks beside busy roadways—for example, if a mechanic working on such a truck were struck by a moving vehicle, or if a passing vehicle struck the parked truck when the mechanic was working on it, thereby harming him or her. But the Court simply does not see how the rule about not operating a truck in an out-of-service condition could be understood to contemplate the risk that a mechanic may crawl under the vehicle in response to a service call, only to be dragged by the driver's intentional choice to pull the truck forward. In other words, the risk of injury to a mechanic examining a vehicle while a driver pulls it forward does not depend on any regulatory violations that might otherwise affect the safety of operating the vehicle. Viewed another way, mechanics working on the vehicle are not among the class of persons that the regulations are designed to protect. Indeed, one would imagine that mechanics are typically, or at least often, working on vehicles whose condition is not compliant with the FMCSRs' requirements. Thus, the harms they suffer while working on such vehicles are not within the range of harms that the FMCSRs are designed to prevent.

Accordingly, the Court finds that evidence that Aloisio violated (or did not violate) FMCSRs by operating in an out-of-service condition is not relevant evidence under Federal Rule of Evidence 401, as the evidence does not tend to make a material fact (e.g., whether any tortious conduct by Aloisio was a proximate cause of Evans' injury) any more or less likely. Relatedly, the Court finds that, even if such evidence has some marginal relevance, that evidence should be excluded under Rule 403 because any probative value it might have would be substantially outweighed by its tendency to create unfair prejudice and to confuse or mislead the jury. In particular, the Court finds that a jury may conclude that it should "punish" Aloisio for the alleged regulatory violation, even if the violation was not a proximate cause of the actual accident that occurred.

Accordingly, the Court finds that testimony from either Scott Turner or Douglas Heard should be excluded to the extent that it concerns whether the condition of Aloisio's truck did or did not comport with the FMCSRs, either at the time he drove forward with Evans underneath the truck or at any earlier or later time. The Court also finds that the Floerchinger Report in its entirety and any testimony as to FMCSR or other safety violations related to vehicle condition observed either before or after the incident should be excluded.

Separately, the Court notes that Aloisio appears to concede that testimony by his expert regarding whether Evans used "common sense" care for his personal safety would not require expertise, and therefore expert testimony on that topic would not be helpful to a jury. (Def. Resp. to Pl. Mot. in Limine, Doc. 48, #1920). Accordingly,

the Court will exclude such testimony. By the same token, however, the Court will not hesitate to exclude testimony by Evans' expert to the extent that such testimony is similarly based only on "common sense" rather than expertise.

At this time, the Court does not consider that either party has shown the other's expert to be so unqualified or unreliable as to be prevented from testifying at all. Thus, the above rulings do not preclude Heard or Turner from offering any otherwise admissible testimony within the scope of their reports concerning issues other than Aloisio's compliance with FMCSRs relating to the condition of his truck. Naturally, the Court reserves a final ruling as to the scope of permissible testimony from any expert, as well as any other contested evidentiary issue, until such time as it is offered at trial.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Aloisio's Motion insofar as it seeks to preclude Turner from testifying that the condition of Aloisio's truck violated the FMCSRs. The Court also **GRANTS** Evans' Motion insofar as it seeks to preclude Heard from testifying that it did not. Finally, the Court **GRANTS** Evans' Motion insofar as it seeks to preclude Heard from testifying that Evans did not exercise common sense care for his safety.

**SO ORDERED.**

September 15, 2021

**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

8